Sosman, J.
Plaintiff USTrust is the holder of an execution lien in the amount of $451,821.63 against defendant Roy Einreinhofer’s interest in property located in Sudbury, Massachusetts. Defendant Susan Catalano purports to hold, as agent for defendant Jo-Ann Einreinhofer, an execution lien senior to that of USTrust and intends to conduct a sheriffs sale on that allegedly senior lien tomorrow, July 29, 1994. USTrust seeks to enjoin that sheriffs sale, alleging that the senior lien is invalid, that it has been collu-sively contrived for the sole purpose of trying to avoid USTrust’s legitimate lien, and that USTrust will suffer irreparable harm if the sale goes forward. For the following reasons, plaintiffs motion is GRANTED.
FACTS
In 1976, defendants Roy and Jo-Ann Einreinhofer took title to real property in Sudbury, Massachusetts as tenants by the entirety. On October 14, 1987, Roy Einreinhofer executed a guarantee of a loan made to Cambridge Marketing, Inc. by Century Bank. Op March 15,1989, Einreinhofer executed a written guarantee of another loan to Cambridge Marketing made by USTrust.
The corporation defaulted on both loans, and Century Bank and USTrust filed their respective actions to collect on the notes and guarantees. Both banks obtained prejudgment attachments on Roy Einreinhofer’s interest in the Sudbury property. On January 12, 1990, Century obtained and shortly thereafter recorded its attachment. On June 14,1990, USTrust obtained and recorded its attachment in the amount of $250,000.
Judgment entered in favor of Century Bank on May 29, 1991. Century’s execution, in the amount of $85,180.96, was recorded on August 20, 1991. On July 7, 1993, USTrust obtained its judgment against Einreinhofer in the amount of $451,821.63. On De *428 cember 2, 1993, the sheriff levied on the properly, recorded the USTrust execution, and then immediately suspended the levy.
Meanwhile, an arrangement was made, with the apparent involvement of the Einreinhofers’ attorney, by which another entity paid Century and obtained the transfer of the Century execution to Jo-Ann Einreinhofer. The Einreinhofers claim to have paid nothing, directly or indirectly, to obtain this execution from Century. In substance, they claim that an entity in which they have no interest purchased this execution (allegedly along with other collateral held by Century) and simply gave it to Jo-Ann Einreinhofer.[1] Jo-Ann Einreinhofer then gave this execution against her husband to defendant Susan Catalano, the secretary of her husband’s attorney.
The Einreinhofers have arranged to sell their home to a Mr. and Mrs. Thomas Davies for $440,000, a price that all parties agree represents a fair market value for the premises. However, the Einreinhofers would like to sell to the Davies without having to pay any of the proceeds towards the USTrust execution lien. In another action, Roy Einreinhofer sought to declare USTrust’s lien invalid on account of G.L.c. 209, §1. That relief was denied. United States Trust Company v. Einreinhofer, 2 Mass. L. Rptr. No. 21, 424 (September 26, 1994).
Having failed to invalidate the USTrust lien, the Einreinhofers now propose to remove it by having Catalano proceed with a sheriffs sale on the execution she allegedly holds from Centuiy and bid in at that sale (on behalf of Jo-Ann Einreinhofer) the amount of the execution. The net effect of the planned sheriffs sale would be to transfer the property from Roy Einreinhofer and Jo-Ann Einreinhofer, as tenants by the entirely, to Jo-Ann Einreinhofer alone without having to satisfy USTrust’s execution lien. Jo-Ann Einreinhofer then intends to sell the property to the Davies and retain the entirety of the sale proceeds.[2]
The Einreinhofers claim that if they can not “clear title” (1.e eliminate the USTrust lien) by way of tomorrow’s sheriffs sale, they will lose the advantageous sale to the Davies, as they will not be able to close with the Davies by the already extended deadline set in the Purchase and Sale Agreement. At argument, however, USTrust confirmed its willingness to let the sale to the Davies go forward, execute the necessary documents to deliver clear title to the Davies, and place the sale proceeds in escrow pending future determination of the parties' respective interests in those funds. The Einreinhofers have refused to proceed with the sale on that basis, alleging that if they can not eliminate the USTrust lien prior to the sale, they will not sell.
DISCUSSION
The present motion by USTrust does not seek to block the ultimate advantageous sale to the Davies. USTrust seeks to enjoin only the step of tomorrow’s purported “sheriffs sale,” a step that would theoretically void USTrust’s lien.
The court is satisfied that USTrust has shown a likelihood, and indeed an extremely high probability, of success on the merits of its claim to extinguish the purportedly senior lien now held by defendant Catalano. While the full details of the Einreinho-fer/ Jorgensen/Lowell Group Trust/Catalano transaction are not known and clearly warrant further discovery,[3] it is readily apparent that, in substance, the senior lien originally held by Century has been satisfied and that the fiction of the continued existence of that senior execution has been collusivefy contrived by the defendants for the sole purpose of avoiding USTrust’s valid execution lien. Whatever Lowell Group Trust paid to Century,[4] it was sufficient for Century to give up all its rights to proceed against Roy Einreinhofer on its execution lien. If asked, it is apparent that Centuiy would have been equally willing to simply discharge the execution. The Einreinhofers deliberately arranged to have the execution transferred rather than discharged, so they could use its senior status as a means to defeat USTrust’s interests.
It is equally apparent that the Century execution lien was not transferred to a person or entity with any interest adverse to the judgment debtor, Roy Einreinhofer, or to anyone that actually intended to try and collect on it. This is not a situation where an unrelated third party bought out Century’s position at a discount in order to try and reap a profit by pursuing Roy Einreinhofer. Rather, the execution was transferred, for no consideration, to Roy Einreinhofer’s wife and then, for reasons discussed below, to Roy Einreinhofer’s attorney’s secretary. It goes without saying that Roy Einreinhofer's attorney would not arrange and defend a transfer to his own secretary of anything that was going to be used adversely to the interests of his own client.[5]
There is also no dispute that the secretary, defendant Catalano, holds this execution and will levy on it solely on the instruction of Jo-Ann Einreinhofer and her boss, the Einreinhofers’ attorney.[6] She holds it solely as the agent of Jo-Ann Einreinhofer and, in all probability, Roy Einreinhofer. It is an absurd fiction to claim that this purported execution lien is now held by anyone other than the Einreinhofers, the owners of the property against which the execution lien is recorded.
Beyond the collusive and sham aspects of this remarkable arrangement, USTrust argues that the holding of the execution by Jo-Ann Einreinhofer and then by her agent Catalano, extinguishes the lien by operation of the doctrine of merger. Indeed, it is undisputed that the transfer of the execution to Catalano was done to try and avoid the argument that Jo-Ann Einreinhofer’s possession of the execution would give rise to extinguishment by merger. Of course, Jo-Ann Einreinhofer’s possession, however temporary, has *429 not been erased from the chain merely by transferring the execution to Catalano. Nor, since Catalano is clearly acting as the Einreinhofers’ agent with respect to this execution, should Catalano be viewed as the actual owner or holder of this execution. The full analysis of the merger theory must await discovery of the precise details of this convoluted transaction, but there appears to be a strong likelihood that a merger occurred somewhere in this chain and that the purported transfer to Catalano will not undo that merger.
In orchestrating and conducting a sheriffs sale of their own residence, the Einreinhofers are asking this court not only to place form over substance but to allow a collusive, deliberate sham transaction to defeat the rights of one of Roy Einreinhofer’s legitimate creditors. See Heller Financial v. Insurance Co. of North America, 410 Mass. 400, 404 (1991) (“we look at the substance of the transaction, including the relationship between the parties, and not at the form”); Widett & Widett v. Snyder, 392 Mass. 778, 784-85 (1984) (“an assignment in form is held to be an extinguishment, when the justice of the case requires it”), quoting McCabe v. Swap, 14 Allen 188, 191-92 (1867). The creativity of the transaction does not conceal its fraudulent nature and purpose, and USTrust has shown a strong likelihood of success on the merits of its assertion that the Century execution should be declared null and void.
As to irreparable harm, it is also apparent that conducting this fictitious sheriffs sale will irreparably damage USTrust. That sale, which will be quickly followed by Jo-Ann Einreinhofer’s sale of the property to persons who are good faith purchasers for value, would place further obstacles in USTrust’s path as it tries to collect on its judgment. Roy Einreinhofer claims to be unemployed and deeply in debt — Le., USTrust will not be able to recover anything except by way of its lien on his interest in the Sudbury property.
Defendants contend that they apprised USTrust of this planned sheriffs sale some time ago and that USTrust has unjustifiably delayed bringing the present action. The March 18, 1994 letter from the Einreinhofers’ attorney, in which the Einreinhofers allege they explained this situation to USTrust, does no such thing. The letter urged USTrust to release its lien for a nominal sum[7] in order to facilitate the sale to the Davies. The Einreinhofers’ attorney argued that the Century execution still had to be satisfied, and that if the Davies sale did not go through, the “successor in interest to Century Bank” would foreclose. Nowhere was the “successor” to Century identified, nor is there anything in the letter to suggest that that “successor” was anyone other than a good faith purchaser for value of the Century execution who intended to try and collect the full $85,000 from Roy Einreinhofer’s interest in the property. The letter nowhere even hints that the Einreinhofers themselves already controlled the Century execution. The true state of affairs was concealed from USTrust until recently, and there has been no delay in USTrust’s present action and motion.
The Einreinhofers also complain that the requested injunction will cause them irreparable harm as it will prevent the sale to the Davies. As discussed above, the injunction will have no such effect. USTrust is ready, willing and able to execute the necessary documents to allow the sale to proceed, with disposition of the proceeds to await resolution of the present dispute. At hearing, the court offered the Einreinhofers that option and made clear that the court would hold USTrust to that offer and allow that ultimate sale to go forward forthwith. The Einreinhofers were unwilling to proceed with the sale on those terms. It is the Einreinhofers who have decided that it is more important to try and defeat USTrust’s lien than to sell to the Davies. As such, the loss of the sale to the Davies is the Einreinhofers’ choice, and the Einreinhofers may not posit such self-inflicted irreparable harm as a basis for defeating USTrust’s meritorious request for a preliminary injunction.
ORDER
For the foregoing reasons, USTrust’s motion for a preliminary injunction is GRANTED and it is hereby ORDERED as follows:
1) Defendant R. Scott Gonfrade, in his capacity as Middlesex County Deputy Sheriff, his agents, servants, employees, attorneys and all those acting in concert with him, are enjoined from selling or otherwise disposing of the real property located at 41 Canterbury Drive, Sudbury, Massachusetts pursuant to the levy of execution made on or about August 20, 1991 as a result of a judgment obtained by Century Bank and Trust Company against Roy J. Einreinhofer; and
2) Defendants Jo-Ann Einreinhofer, Roy J. Einreinhofer, Susan Catalano, their agents, servants, employees, attorneys and all those acting in concert with them, are enjoined from assigning or transferring the execution issued to Century Bank and Trust Company or from taking any further action to enforce their rights, if any, in said execution.

 Jo-Ann Einreinhofer, the recipient of this generous gift, claims not even to know who it was that paid off Century. Roy Einreinhofer also claims ignorance of the buyer’s identity, but claims to know that this mysterious benefactor paid Century less than the full amount it was owed on the execution. A co-guarantor on the Century note, Vidar Jorgensen, claims that Century’s interest was bought by an entity known as Lowell Group Trust, ostensibly because it wanted certain intangible assets of the former Cambridge Marketing, Inc. The beneficiaries of this Lowell Group Trust are not identified, nor is their relationship to the Einreinhofers or Jorgensen disclosed. No reason is given why Lowell Group Trust would purchase Century’s execution against Roy Einreinhofer and then give it, for no consideration, to Jo-Ann Einreinhofer.

 Prior mortgages on the property total approximately $205,000. The net sale proceeds to Jo-Ann Einreinhofer would be somewhere in excess of $200,000.

 The defendants’ affidavits on the subject, filed in opposition to the present motion, reveal only that which the defendants believe will assist their cause and are deliberately cryptic as to all other details.

 Roy Einreinhofer apparently knows what was paid to Century, but his affidavit declines to state the figure, other than to assert that it was “less than” the full amount owed. It appears likely that Century was paid substantially, if not technically, in full. Holding both valuable assets of the defunct corporation and a fully and adequately secured position on the Sudbury property, there is little reason to think that Century accepted any substantial discount on its $85,181 judgment.

 Nor is this a situation where Jo-Ann Einreinhofer intends to act contrary to her husband’s interests. Both husband and wife are represented by the same attorney, the attorney that arranged the transfer of this execution first to Jo-Ann Einreinhofer and then to his own secretary. It again goes without saying that Roy Einreinhofer’s attorney would not arrange and implement a transfer of an execution that would be used by Jo-Ann Einreinhofer against his own client. If there were any such risk, the obvious course would have been to obtain the straightforward (and already paid for) discharge of the execution from Century.

 Indeed, as discussed at length in this court’s prior ruling on Einreinhofer's motion to invalidate USTrust’s lien [2 Mass. L. Rptr. No. 21, 424 (September 26, 1994)], any holder of the Century execution lien would not be allowed to conduct a sheriffs sale of the property as long as Jo-Ann Einreinhofer, the non-debtor spouse, used the property as her principal residence. G.L.c. 209, §1. Catalano can only conduct the upcoming sheriffs sale with Jo-Ann Einreinhofer’s permission and waiver of her §1 rights.

 Roy Einreinhofer offered $15,000 for release of the $451,821.63 execution lien.